# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
)
**Philip Morris USA Inc.,** *et al.*,                )
)
**Plaintiffs,**                )
)
v.                )          **Civil No. 1:15-cv-01590 (APM)**
)
**United States Food and Drug**                )
**Administration,** *et al.*,                )
)
**Defendants.**                )
_____)

## MEMORANDUM OPINION AND ORDER

## I.    INTRODUCTION

Plaintiffs are a group of tobacco companies[1] who seek my recusal in this case primarily

because my former law partner provided legal services to an anti-tobacco organization—the

Campaign for Tobacco-Free Kids ("CTFK")—while I was in private practice.  CTFK submitted

comments to Defendant Food and Drug Administration ("FDA") supporting the regulatory action

that Plaintiffs now challenge.  My former law partner advised CTFK in connection w13ith those

comments.

Plaintiffs advance 28 U.S.C. § 455(b)(2) as their primary ground for disqualification.

Under that statute, I must recuse if my former law partner's service as a lawyer to CTFK

concerned "the matter in controversy" now before me.  Plaintiffs argue that my former law

partner's representation of CTFK concerned "the matter in controversy" because CTFK's

comments endorsed the same FDA action that Plaintiffs now challenge.  I disagree.  My former

---

[1] The Plaintiffs are:  Philip Morris USA Inc.; U.S. Smokeless Tobacco Company LLC; R.J. Reynolds Tobacco Company; American Snuff Company, LLC; Santa Fe Natural Tobacco Company, Inc.; and ITG Brands LLC.

law partner's advice to CTFK is too attenuated from the present litigation to constitute the same "matter in controversy." CTFK simply advocated for the administrative action now in dispute. The organization is unlikely to become a party or witness in this matter; my former partner's legal advice to CTFK is unlikely to become an issue in this litigation; and CTFK will not directly receive a financial benefit or incur a liability resulting from the outcome of this case. Furthermore, a decision to recuse would encourage inappropriate judge-shopping by future litigants. Therefore, I conclude that Section 455(b)(2) does not compel my recusal.

Plaintiffs also contend that I must recuse under 28 U.S.C. § 455(a) because several factors create an "appearance of partiality." Again, I disagree. Even when combined, the facts of (1) my former law firm's representation of CTFK and other anti-tobacco organizations, (2) my wife's present partnership in my former law firm, and (3) another former law partner's appearance in this matter as "Of Counsel" for FDA, would not lead a reasonable observer, informed of the underlying details of these facts, to question my impartiality in this case. Section 455(a), therefore, does not require my recusal.

As further explained below, Plaintiffs' Motion for Recusal is denied.

## II.   BACKGROUND

### A.   The Case Before Me

This case concerns a challenge to a FDA "guidance," issued on September 8, 2015, entitled "Guidance for Industry:  Demonstrating the Substantial Equivalence of a New Tobacco Product: Responses to Frequently Asked Questions (Edition 2)" (the "Guidance").  Compl., ECF No. 1, Ex. B, ECF No. 1-4.  The Guidance "describes FDA's current thinking on whether and when a change to a tobacco product's label, product quantity in the package, additives, or specifications renders that later product a 'new tobacco product' subject to premarket review . . . ."  *Id.* at 2.  Plaintiffs

have asserted that the Guidance is "unlawful and unconstitutional" for a host of reasons, including that the Guidance "contravenes . . . the Family Smoking Prevention and Tobacco Control Act ("Tobacco Control Act"), violates the substantive and procedural requirements of the Administrative Procedure Act, and infringes Plaintiffs' First Amendment rights."  *See* Pls.' Mot. for Recusal, ECF No. 25, at 2 [hereinafter Recusal Mot.].

FDA issued a draft version of the Guidance in September 2011 (the "Draft Guidance").[2] As pertinent here, the Draft Guidance proposed that a label change to a tobacco product would create, with some exceptions, a "new tobacco product" under Section 910(a)(1)(B) of the Federal Food, Drug, and Cosmetic Act, as amended by the Tobacco Control Act, because a product label "is considered a 'part' of that product."  Admin. Rec., ECF No. 33 [hereinafter AR], Ex. D, ECF No. 33-5, at 085-87.  On September 9, 2011, FDA published a notice that it would accept comments from the public regarding the Draft Guidance.  Draft Guidance for Industry and Food and Drug Administration Staff; Demonstrating the Substantial Equivalence of a New Tobacco Product: Responses to Frequently Asked Questions; Availability, 76 Fed. Reg. 55,927, 55,927-28 (Sept. 9, 2011); AR, Ex. H, ECF No. 33-9, at 478-79.

CTFK, whose stated mission includes working to "reduce tobacco use and its deadly toll in the United States and around the world,"[3] responded to FDA's request for input.  On November

---

[2] *See* Draft Guidance for Industry and FDA Staff:  Demonstrating the Substantial Equivalence of a New Tobacco Product:  Responses to Frequently Asked Questions (Sept. 2011).  Admin. Rec., ECF No. 33 [hereinafter AR], Ex. D, ECF No. 33-5, at 083-95.

[3] According to its website, CTFK is:

> a leading force in the fight to reduce tobacco use and its deadly toll in the United States and around the world.  Our vision:  A future free of death and disease caused by tobacco.  We work to save lives by advocating for public policies that prevent kids from smoking, help smokers quit and protect everyone from secondhand smoke.

*Who We Are*, Campaign for Tobacco Free Kids, http://www.tobaccofreekids.org/who_we_are/ (last visited January 12, 2016).

8, 2011, CTFK, jointly with other groups,[4] submitted comments on the Draft Guidance. AR, Ex. F, ECF No. 33-7, at 179-203.  The joint submission endorsed FDA's position that the label and packaging of a tobacco product is "part of that product."  *Id.* at 186 ("We believe . . . that the agency correctly notes that the label and packaging of a tobacco product is 'part' of that product."). The groups also agreed with many of FDA's proposed answers to questions about when a labeling or packaging change would make a tobacco product a "new tobacco product" that would be subject to certain premarket requirements.  *Id.* at 186-89.

In April 2013, CTFK again weighed in on the Draft Guidance through a second joint submission.[5]  AR, Ex. G, ECF No. 33-8, at 214-95; Recusal Mot. at 3.  The second joint submission responded to comments regarding the Draft Guidance that tobacco companies had submitted to the FDA.  Recusal Mot. at 3.  Two of the Plaintiff companies (Philip Morris USA and U.S. Smokeless Tobacco Company) asserted—as they do in this litigation—that premarket submission of labeling and packaging changes would be contrary to the Tobacco Control Act and would violate the First Amendment.  *Id.* at 2-3.  Specifically, they argued that a label is not a "part" of a tobacco product and thus a labeling change would not create a "new tobacco product" under the Tobacco Control Act.  *Id.* (citing AR, Ex. G., at 266-67).  CTFK and other groups responded to these criticisms by defending FDA's conclusion that a name change could constitute a "new tobacco product" and by asserting that the tobacco companies were wrong to argue that the Tobacco Control Act created a prior restraint on the renaming of substantially equivalent tobacco products.  *Id.* (citing AR, Ex. G., at 266-67).

---

[4] The other groups that joined in the November 2011 comments included:  American Cancer Society Cancer Action Network; American College of Preventive Medicine; American Heart Association; American Lung Association; American Psychological Association; American Thoracic Society; Legacy; National Latino Tobacco Control Network; Partnership for Prevention; and Society for Research on Nicotine and Tobacco.
[5] The groups that joined the April 2013 comments included:  American Heart Association; American Lung Association; American Cancer Society Cancer Action Network; and Legacy.

The FDA issued the final Guidance, which is the subject of this litigation, on September 30, 2015.[6]

## B.    Zuckerman Spaeder's Representation of CTFK

Before taking the bench[7] in January 2015, I was a partner at the law firm of Zuckerman Spaeder LLP, where I practiced law for more than ten years.  My wife also has been a partner at Zuckerman Spaeder since 2008 and has practiced there since 2000.  Zuckerman Spaeder is known primarily as a litigation boutique that specializes in white-collar criminal defense and complex civil litigation.  The firm has fewer than 100 lawyers.

Several of the firm's partners have expertise in food and drug law.  One of them represents anti-tobacco groups, including CTFK.  Zuckerman Spaeder's website reports that the firm "represented a leading public health group in negotiations over legislation to give the FDA jurisdiction over tobacco products, culminating in enactment of the [Tobacco Control Act], and advises this group regarding FDA implementation of the new law."[8]  According to Plaintiffs, the aforementioned "leading public health group" is CTFK.  Notice of Informational Request, ECF No. 14, at 2.

On October 21, 2015, Plaintiffs filed a Notice of Informational Request (the "Notice").  *Id.* at 1-5.  The Notice asked that I "ascertain whether any Zuckerman Spaeder lawyer was involved

---

[6] The Guidance issued on September 30, 2105, is actually the second "final" version of the Guidance.  FDA initially issued a "final" Guidance on March 4, 2015 ("Initial Guidance").  AR, Ex. C, ECF No. 33-4, at 061-82.  Plaintiffs then filed suit against FDA on April 14, 2015, in a case that ultimately was assigned to me.  *See Phillip Morris USA Inc. v. FDA*, Civ. No. 15-544 (D.D.C.).  Shortly after the suit's filing, FDA announced that it would evaluate potential changes to the Initial Guidance and that it would not enforce all of the requirements set forth in the Initial Guidance during the review.  AR, Ex. B, ECF No. 33-3, at 040 n.1.  Plaintiffs thereafter dismissed their suit without prejudice.

[7] While I appreciate Plaintiffs' characterization of my recently becoming a judge as an "accession to the bench," Notice of Informational Request, ECF No. 14, at 1, simply "taking the bench" will do.

[8] *Food & Drug: Regulatory and Compliance*, Zuckerman Spaeder LLP, http://www.zuckerman.com/practices-Food-and-Drug-FDA.html (last visited January 12, 2016).

in advising, counseling or representing CTFK or any other anti-tobacco organization in connection

with the Guidance while [I] was a partner at the firm." *Id.* at 3.

I responded to Plaintiffs' request on October 30, 2015, and disclosed the following:

While [I] was a partner of the firm, Zuckerman Spaeder provided legal counsel to
CTFK relating to the comments that it submitted to the FDA in June 2013 about
the draft Guidance.  That legal advice pertained to, among other things, the "Label
Changes" Question & Answer section of the draft Guidance.  Zuckerman Spaeder
did not provide any legal counsel to CTFK relating to the comments that it
submitted to the FDA in November 2011 about the draft Guidance.

Response to Informational Request, ECF No. 24, at 1.  Neither I nor my wife advised CTFK

concerning the Draft Guidance.  *Id.* at 1-2.  Nor has either of us ever worked on behalf of CTFK

on any other matter.  And, although I generally knew that CTFK was a Zuckerman Spaeder client,

I was not aware at the time the advice was given that the firm was advising CTFK in connection

with the Draft Guidance.  *Id.*

To the foregoing landscape, I add the following, which came to light after I filed my

Response to the Informational Request and after Plaintiffs moved for my recusal.  On November

19, 2015, Defendants filed a response to Plaintiffs' Motion for Recusal, in which they took no

position on the Motion.  Defs.' Resp. to Pls.' Mot. for Recusal, ECF No. 27, at 1.  That filing

identified, for the first time in these proceedings, William B. Schultz as "Of Counsel" for

Defendants, *id.*—though to date, he has not entered a formal appearance as counsel of record for

Defendants.[9]  Mr. Schultz is presently General Counsel of the U.S. Department of Health and

Human Services ("HHS").  He is also my former law partner at Zuckerman Spaeder.  Mr. Schultz

left the firm to become acting General Counsel of HHS in 2011, approximately two years before

---

[9] The parties filed a Joint Proposed Briefing Schedule on October 23, 2015.  ECF No. 16.  But Mr. Schultz was not
listed as of "Of Counsel" for Defendants on that filing.

the firm gave advice to CTFK about the Draft Guidance.  I have remained friends with Mr. Schultz

since he left the firm.

## III.    DISCUSSION

Plaintiffs seek my recusal on two grounds.  First, they argue that I must recuse under

28 U.S.C.  § 455(b)(2), "because lawyers at Zuckerman Spaeder provided legal advice on this

matter while the Court was a partner at the firm."  Recusal Mot. at 5.  Second, they assert that

recusal is required under 28 U.S.C.  § 455(a) "because Zuckerman Spaeder's legal advice to CTFK

regarding the regulatory requirements that Plaintiffs are challenging here—together with the firm's

other extensive anti-tobacco activities and the Court's close personal connections with the firm—

provide grounds on which this Court's impartiality might reasonably be questioned."  *Id.* at 5-6.

I address each of those arguments in turn.

### A.    Recusal under Section 455(b)(2)

#### 1.    Definition of "Matter in Controversy"

Whether Section 455(b)(2) compels my recusal turns on whether my former law partner's

legal services to CTFK in connection with the Draft Guidance concerns "the matter in controversy"

that is now before me.  Section 455(b)(2) provides that a judge "shall . . . disqualify himself" where

"a lawyer with whom he previously practiced law served during such association as a lawyer

concerning the matter [in controversy]."  28 U.S.C. § 455(b)(2).  If applicable, Section 455(b)(2)

mandates recusal; it cannot be waived by the parties.  *Id.* § 455(e).

"[B]ecause judges are presumed to be impartial, the Court must begin its analysis of the

allegations supporting . . . a request [for recusal] with a presumption against disqualification."

*SEC v. Bilzerian*, 729 F. Supp. 2d 19, 22 (D.D.C. 2010) (citation and internal quotation marks

omitted) (second alteration in original); *see also Am. Prairie Constr. Co. v. Hoich*, 594 F.3d 1015,

1021 (8th Cir. 2010).  The moving party bears the burden of establishing the grounds for recusal

under Section 455(b)(2).  *See E.I. du Pont de Nemours and Co. v. Kolon Indus., Inc.*, 847 F. Supp.

2d 843, 857 (E.D. Va. 2012) (stating that it is burden of "the party moving for recusal under

§ 455(b)[ ] to demonstrate that the presiding judge or one of his former law partners 'served in the

matter in controversy.'" (citation omitted)); *see also Am. Prairie Constr. Co. v. Hoich*, 594 F.3d

1015, 1021 (8th Cir. 2010) (stating that "the party seeking disqualification bears the substantial

burden of proving otherwise").

According to Plaintiffs, the logic requiring my recusal is straightforward.  They argue that,

"during this Court's tenure at the firm, Zuckerman Spaeder provided legal advice to CTFK

regarding comments urging FDA to take the very regulatory action that is under judicial review in

this case . . . .  Because Zuckerman Spaeder's legal advice therefore unquestionably 'touch[ed]

upon the merits of this case,' it pertained to the same matter in controversy and necessitates recusal

under Section 455(b)(2)."  Recusal Mot. at 9 (quoting *Little Rock Sch. Dist. v. Armstrong*, 359

F.3d 957, 960 (8th Cir. 2004)).

In my view, the issue is not so simple.  *See generally* Richard E. Flamm, *Judicial

Disqualification: Recusal and Disqualification of Judges* § 24.3 (2d ed. 2007) (observing that

"precisely what Congress meant by the term 'matter in controversy' is not entirely clear").  Our

Court of Appeals has not had occasion to address what "the matter in controversy" means under

Section 455(b)(2).  In response to a motion seeking his recusal under Section 455(b)(3) based on

his prior *government* service, Judge Kavanaugh has observed that Section 455(b)(2) is a "far

broader 'associational' rule for recusal based on prior *law firm* employment."  *Baker & Hostetler

LLP v. U.S. Dep't of Commerce*, 471 F.3d 1355, 1358 (D.C. Cir. 2006) (Kavanugh, J.).  But beyond

Judge Kavanaugh's comment, no panel or judge of the Court of Appeals has had reason to opine

on the meaning of "matter in controversy" under Section 455(b)(2).  And, surprisingly, neither have any members of this District Court.

Cases outside this Circuit present a somewhat muddled picture.  Some courts have read "matter in controversy" strictly to mean the actual case before the court.  *See Blue Cross & Blue Shield of Rhode Island v. Delta Dental of Rhode Island*, 248 F. Supp. 2d 39, 46 (D.R.I. 2003) [hereinafter *Delta Dental*].  The court in *Delta Dental* concluded:  "[Section] 455(b)(2) should be given a restrictive reading; that is, it should be read as applying only to the case that is before the Court as defined by the docket number attached to that case and the pleadings contained therein . . . ."  *Id.*; *see also Pitrolo v. County of Bumcombe, N.C.*, No. 06-cv-199, 2013 WL 588753, at *5 (W.D.N.C. Feb. 13, 2013) (citing approvingly *Delta Dental*'s definition of "matter in controversy").

But *Delta Dental* is an outlier.  Most courts, including the appellate courts that have considered the issue, have held that "matter in controversy" has a broader meaning.  *See, e.g.*, *Little Rock School Dist.*, 359 F.3d at 960 (stating that "the phrase 'matter in controversy' must mean something other than the word 'case'"); *Preston v. United States*, 923 F.2d 731, 734-35 (9th Cir. 1991) (stating that "[t]he Supreme Court has never limited recusal requirements to cases in which the judge's conflict was with the parties named in the suit" and concluding that the judge should have recused under Section 455(b)(2) when his former law firm represented a client who, though not a party to the suit, could have been sued for indemnification and was involved as a third-party in the case); *In re Rodgers*, 537 F.2d 1196, 1197-98 (4th Cir. 1976) (ordering recusal where the judge's former law partner represented a client who would be a witness in a criminal case and where the law partner's services to the client would be put at issue at trial by the defense).[10]  The

---

[10] *See also United States v. Lawson*, No. 3:08-21-DCR, 2009 WL 1702073, at *2 (E.D. Ky. June 17, 2009) ("[T]he phrase 'matter' as used in § 455(b)(2) in intended to have broader meaning than the specific case pending for

reason for this broader interpretation is rooted in the statutory text.  As the Eighth Circuit explained in *Little Rock School District*:

> Congress easily could have substituted the word "case" for the words "matter in controversy," but did not do so.  This deliberate choice by Congress demonstrates an intent that the words "matter in controversy" mean something other than what we commonly refer to as a "case."  In fact, Congress used the words "proceeding," "case in controversy," and "subject matter in controversy" in various other subsections of § 455(b) to describe situations where a judge must disqualify himself.  Thus, we must assume that Congress ascribed a particular meaning to the words "matter in controversy . . . ."

359 F.3d at 960.

Plaintiffs urge me to adopt the broader reading of "matter in controversy."  *See* Recusal Mot. at 6-7.  I will do so for the reasons stated in *Little Rock School District*.  "Matter in controversy" must mean more than simply "case," because Congress used the words "case" and "proceeding" elsewhere in Section 455(b), but not in subsection (b)(2).   When "Congress includes particular language in one section of a statue but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."  *Russello v. United States*, 464 U.S. 16, 23 (1983) (citation and internal quotation marks omitted).  But that conclusion begs a follow-up question:  If "matter in controversy" does not mean "case," then what does it mean?

Case law offers neither a precise nor uniform definition.  Instead, to assess the scope of "matter in controversy," courts have developed various formulations designed to capture the relatedness between (1) the case in which recusal is raised and (2) the judge's prior law firm's legal work.  For instance, in *Little Rock School District*, the Eighth Circuit concluded that recusal was not required when there was not a "sufficient relationship" between the pending case and the

---

resolution."); *In re Letters Rogatory from Supreme Court of Ontario*, 661 F. Supp. 1168, 1174 (E.D. Mich. 1987) ("[D]isqualification is required where the proceeding relates in any broad sense to the suspect matter, even though such has not been made part of the current proceeding.").

law firm's representation.  359 F.3d at 961; *see also In re Letters Rogatory from Supreme Court of Ontario*, 661 F. Supp. 1168, 1173 (E.D. Mich. 1987) [hereinafter *In re Letters Rogatory*] (inquiring whether matters were "sufficiently related"); *Hoffenberg v. United States*, 333 F. Supp. 2d 166, 174-76 (S.D.N.Y. 2004) (inquiring whether the matters were "significantly related"). In *United States v. DeTemple*, 162 F.3d 279 (4th Cir. 1998), the Fourth Circuit held a judge need not recuse where the relationship between the case before him and the law firm's representation was "too attenuated."  *Id*. at 286.   And, in *Preston*, the Ninth Circuit asked "whether the relationship between the judge and an interested party was such as to present a risk that the judge's impartiality in the case at bar might reasonably be questioned by the public."  923 F.2d at 735 (citation omitted).

Regardless of the formulation used, one thing is certain:  the question of recusal under Section 455(b)(2) is necessarily a fact-intensive inquiry.  Courts have considered a host of factors in determining whether recusal is warranted, including:  (1) the overlap of the factual and legal issues presented, *see, e.g.*, *Little Rock School Dist.*, 359 F.3d at 960 (affirming judge's decision not to recuse where prior representation "did not go to the merits of the case"); *Kolon Indus.*, 847 F. Supp. 2d at 859 (E.D. Va. 2012) (declining to recuse where "the cases are really quite different in nature"); (2) whether the judge's former law partner is likely to be a witness or his legal representation is likely to be made an issue in the pending case, *see, e.g.*, *In re Rodgers*, 537 F.2d at 1198 (ordering recusal where "the district judge's former law partner and [the law partner's client] will undoubtedly testify about the events that took place before the judge withdrew from his law firm"); *DeTemple*, 162 F.3d at 284 (affirming decision not to recuse where prior representation "played no role in either the defense or prosecution of DeTemple's case" and "no one from . . . [the judge's] former law firm testified at DeTemple's trial"); (3) whether the judge's

former law firm is involved in the pending case's pre-trial discovery, *see, e.g.*, *Preston*, 923 F.2d at 734 (ordering recusal where the judge's former law firm represented a client extensively in pre-trial discovery); (4) the impact of the pending case's outcome on the law firm's client, *see, e.g.*, *id.* at 375 (ordering recusal where an adverse decision to one party could mean potential indemnification claims against the law firm's client); and (5) the extent of the judge's informal exposure to the law firm's representation, *see, e.g.*, *Oriental Fin. Grp., Inc. v. Fed. Ins. Co.*, 450 F. Supp. 2d 169, 171 (D.P.R. 2006) (recusing, even though the judge had no formal involvement in the matter before him, where the judge "had access to most, if not all, areas of the litigation division" and spent "most of his working and lunch time with partners and associates of said division").

The Judiciary's Committee on Codes of Conduct (the "Committee") offers similar guidance in its *Compendium of Selected Opinions*, which can be found within the Guide to Judiciary Policies and Procedures (the "*Compendium*"). The *Compendium* "contains a summary of selected published and unpublished opinions issued by the Committee on Codes of Conduct" and "contains summaries of the advice given in response to confidential fact-specific inquiries." Committee on Codes of Conduct, *Compendium of Selected Ethics Opinions*, at xii (October 2015) [hereinafter "Compendium"].[11] The Committee has advised that "[a] judge should recuse under Canon 3C(1)(b) [of the Code of Conduct for United States Judges] when a case is so closely related to a matter handled by the judge's former firm while the judge was there that it should be considered the same matter in controversy." *Id.* § 3.3-1(i). The Committee has identified three factors for judges to consider: (1) the commonality of the parties; (2) the overlap of factual issues; and (3) whether the judge's decision will have preclusive effect. *See id.*

---

[11] *Available at* http://jnet.ao.dcn/policy-guidance/guide-judiciary-policy/volume-2-ethics-and-judicial-conduct/part-b-ethics-advisory-opinions/ch-3-compendium-selected-opinions (last visited January 12, 2016).

### 2.    *Zuckerman Spaeder's Representation of CTFK*

As far as I can tell, the recusal motion presented here is novel.  I have found no case, and Plaintiffs have cited none, in which a party has sought a judge's recusal under Section 455(b)(2) because he practiced with a lawyer who advised a client, though not a party to the lawsuit, in submitting comments endorsing the agency action challenged in the litigation.[12]  Generally, where Section 455(b)(2) has caused a judge to recuse, the conflict has arisen from the judge's prior law firm's representation of a client in litigation that is the same or closely related to the case before the court.  *See, e.g.*, *Preston*, 923 F.3d at 732, 734-35 (ordering recusal where the judge's former law firm represented a company in state court litigation and in connection with discovery in a pending case); *Oriental Fin. Grp.*, 450 F. Supp. 2d at 171-72 (recusing where the judge's former law firm colleagues worked on the actual case before the court).

By contrast, recusal based on prior representation in a related *non*-litigation matter is seemingly rare under Section 455(b)(2).  *See, e.g.*, *DeTemple*, 162 F.3d at 284-85 (holding, in a criminal bankruptcy fraud case, that recusal was not required where the trial judge had represented a creditor of the defendant's company in an effort to collect a debt from the company); *Hoffenberg*, 333 F. Supp. 2d at 174-76 (declining to recuse in a post-conviction matter where the petitioner, who had been convicted of fraud, claimed that the judge had given legal advice to his wife in

---

[12] The *Compendium* does opine that a judge should recuse, under Canon 3C(1)(b), "where [the] judge's former firm represented a party to a federal *agency proceeding* and the agency's decision is under review by the court." Compendium § 3.3-1(i) (emphasis added).  I do not read that statement as applying to a federal agency's notice and comment process.  The *Compendium* uses the word "proceeding," which in my view means or connotes litigation, investigation, or an adjudicative process before a federal agency.  Canon 3C, which the foregoing opinion interprets, defines "proceeding" to include "pretrial, trial, appellate review, or other stages of litigation."  Code of Conduct for United States Judges Canon 3C(3)(d), http://www.uscourts.gov/judges-judgeships/code-conduct-united-states-judges#d (last visited Jan. 12, 2016).  Similarly, 28 U.S.C. § 455(d)(1) defines "proceeding" to include "pretrial, trial, appellate review, or other stages of litigation."  And, *Black's Law Dictionary* defines "administrative proceeding" as a "hearing, inquiry, investigation, or trial before an administrative agency, usu. adjudicatory in nature but sometimes quasi-legislative."  Black's Law Dictionary (10th ed. 2014).

connection with a sale that was the subject of an SEC complaint that the defendant asserted was the basis for his indictment).

But where recusal has occurred due to a non-litigation representation, typically, the substance of the law firm's representation, or the representation itself, was likely to become an issue in the case before the court.  Take, for example, *In re Rodgers*, a case cited by Plaintiffs. *See* Recusal Mot. at 7.  There, the defendants were indicted for fraud and racketeering in connection with both the passage of legislation and their purchase of a horse racetrack.  The Fourth Circuit ordered the trial judge's recusal because his firm had represented a client in connection with the same legislation and transaction on which the indictment centered and because, in the case before the court, the defendants intended to "attempt to use the [judge's former law] partner and his client as witnesses to prove that their goals were identical and legitimate."  537 F.2d at 1198.

In another case cited by Plaintiffs, *In re Letters Rogatory*, the trial judge recused because his prior law firm's representation could have become an issue in the matter before him. *See* Recusal Mot. at 7; *see also In re Letters Rogatory*, 661 F. Supp. 2d at 1172-74  There, the question was whether the court could preside over subpoena proceedings arising out of a Canadian litigation against a client of the judge's former firm.  The judge's former law partner, who was subpoenaed for testimony, had provided advice to the client about loan transactions at issue in the Canadian proceeding.  661 F. Supp. 2d at 1170 n.5, 1172.  The judge recused because, if the parties had asked him to resolve a dispute over the attorney-client privilege, he would have had to review documents prepared by his former law partner.  *Id.* at 1174; *see also id.* (concluding that "where a claim or defense makes use of the testimony of the judge's former law partner as it relates to legal services he rendered on the transactions in which the issues litigated had their origins, the judge

should recuse himself" (citing *In re Hughes Aircraft Co.*, 215 Ct. Cl. 989 (1977), and *In re Rodgers*)).

Against this backdrop, I conclude that my former law partner's representation of CTFK is too attenuated a representation to be considered part of the "matter in controversy" before me for purposes of Section 455(b)(2).  Admittedly, there is substantial overlap between the subjects of the two matters, as both concern the FDA's authority to require premarket submissions for label and packaging changes.  But Plaintiffs have not asserted that CTFK is likely to become a party or a witness in this matter, as in *In re Rodgers*, or that my former firm's representation of CTFK will have any role in the claims, defenses, and arguments advanced by the parties, as in *In re Letters Rogatory*.  The absence of such a prospect is not surprising.  After all, this case presents pure questions of law as to whether FDA has exceeded its statutory authority or violated Plaintiffs' First Amendment rights.  I will not hear from witnesses.  I will not take evidence.  My decision will be based strictly on the parties' arguments and the administrative record.  It is true, as Plaintiffs point out, *see* Recusal Mot. at 9, that CTFK's comments, submitted jointly with other groups, are part of the administrative record.  But CTFK's comments are not likely to play any role in my decision making, and Plaintiffs have not suggested otherwise.  Thus, the fact that CTFK, jointly with other organizations, articulated a position on the issues before me will not be relevant to these proceedings.

CTFK, of course, has an interest in the outcome of this case.  And it is fair to describe that interest as more intense than that of the average citizen.  But that is not enough to warrant recusal under Section 455(b)(2).  *Preston*, upon which Plaintiffs rely, *see* Recusal Mot. at 8, is a different case.  *Preston* was a wrongful death action brought under the Federal Tort Claims Act against the United States, in which the plaintiff argued that the trial judge was required to recuse under Section

455(b)(2) because his former firm represented an interested third party, Hughes Aircraft Company. 923 F.2d at 732. The Ninth Circuit agreed that recusal was required in part because, "[a]lthough Hughes was never a party to the litigation before [the trial judge], had judgment been rendered against the government a potential claim for indemnification against Hughes would have been triggered under a contract between Hughes and the government." *Id.* at 731. The potential legal obligation and direct pecuniary impact on the law firm's client, along with the fact that the judge's former law firm had represented Hughes both in a state court action involving Preston's death and in pre-trial discovery in the federal case, caused the Ninth Circuit to conclude that recusal was required under Section 455(b)(2). *Id.* at 734-36. Here, by contrast, the outcome of this case will not give rise to any legal obligation or have any direct pecuniary impact on CTFK. And, although CTFK's legal position mirrors FDA's, their common positional interest is simply too attenuated to warrant my recusal under Section 455(b)(2).

I also decline to recuse under Section 455(b)(2) because my acceptance of Plaintiff's position would encourage judge-shopping by litigants, particularly in this District. *See In re Letters Rogatory*, 661 F. Supp. at 1172 ("[S]ection 455 is to be construed narrowly to prevent judge shopping."). My decision on recusal is, of course, not binding on anyone. However, a decision by me to step aside could be used by future litigants to convince other judges to do the same in similar circumstances. And, in this jurisdiction, that risk is not remote. This Court has long history of judges who have had substantial tenures in the private practice of law, including within some of the District's largest law firms. The current judges in this District hail from, just to name a few, Baker Botts LLP; Boies, Schiller & Flexner LLP; Crowell & Moring LLP; Miller & Chevalier Chartered; White & Case, LLP; Williams & Connolly LLP; and Wilmer Cutler

Pickering Hale and Dorr LLP.[13]   Firms of such size and caliber—some with well over 1,000 lawyers—have multi-faceted practices.   And, because this is our nation's capital, those firms often have government relations and regulatory groups.   Indeed, attempting to shape legislation and administrative rulemaking is an important part of what lawyers do in this city.

Given these realities, it is not hard to conceive how litigants could be emboldened to judge-shop if I were to recuse in this case.   If I accepted Plaintiffs' position, would a judge be required to recuse when her former law partner, unbeknownst to the judge while she was at the firm, lobbied Congress on behalf of a client in favor of a piece of legislation that is later challenged as unconstitutional?   Or, instead of lobbying Congress, what if the former partner met on behalf of a client with an Executive Branch official about an executive order that is later challenged as exceeding the President's authority?   Or, what if, as here, the former partner advised a client about comments to a proposed administrative rule, but the client's comment was just one of hundreds, if not thousands, received by the agency?   None of these are unusual situations.   And a judge is not required to recuse merely because a litigant has discovered an attenuated connection between the judge's former law firm and the issues before the court.   *See id.* at 1172 ("[E]ach judge must be alert to avoid the possibility that those who would question his impartiality are in fact seeking to avoid the consequence of his expected adverse decision." (alteration in original) (quoting 1974 U.S. Code Cong. & Admin. News 6351, 6355)).

Accordingly, for the foregoing reasons, I conclude that Section 455(b) does not compel my recusal in this case.

---

[13] The same is true of our Court of Appeals.   Current members of the Court of Appeals practiced at, among other firms, Akin Gump Strauss Hauer & Feld LLP; Arnold & Porter LLP; Hogan Lovells; Kirkland & Ellis LLP; O'Melveny & Myers, LLP; and Venable LLP.

### B.      Recusal under Section 455(a)

Alternatively, Plaintiffs assert that I should recuse under Section 455(a).  They contend that my recusal is warranted by:  (1) my former firm's advice to CTFK about the Draft Guidance and its representation of other anti-tobacco organizations; (2) my wife's partnership in the firm; and, presumably, (3) my former partner William H. Schultz's status in this matter as "of counsel" for Defendants.  I disagree.  These facts, individually and collectively, would not cause a reasonable person to doubt my impartiality in this matter.

Section 455(a) has a broader scope than Section 455(b), *Liteky v. United States*, 510 U.S. 540, 567 (1994) (Kennedy, J., concurring), and requires a judge to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned," 28 U.S.C. § 455(a).  Even the mere appearance of bias is sufficient to mandate recusal—whether there is actual bias is irrelevant.  *See Liteky*, 510 U.S. at 567 (Kennedy, J., concurring).

Because Section 455(a)'s purpose "is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible," *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 865 (1988) (citation omitted), it requires the application of an objective standard, *see SEC v. Loving Spirit Found.., Inc.*, 392 F.3d 486, 493 (D.C. Cir. 2004). "Recusal is required when 'a reasonable and informed observer would question the judge's impartiality.'" *Loving Spirit Found.*, 392 F.3d at 493 (quoting *United States v. Microsoft Corp.*, 253 F.3d 34, 114 (D.C. Cir. 2001) (en banc) (per curiam)).  "This standard requires that we take the perspective of a fully informed third-party observer who 'understand[s] all the relevant facts' and has 'examined the record and the law.'"  *United States v. Cordova*, 806 F.3d 1085, 1092 (D.C. Cir. 2015) (quoting *United States v. Holland*, 519 F.3d 909, 914 (9th Cir. 2008) (internal quotation marks omitted) (alteration in original)).  And, importantly, "[a] reasonable observer must assume that judges are

ordinarily capable of setting aside their own interests and adhering to their sworn duties to 'faithfully and impartially discharge and perform all the duties' incumbent upon them." *Armenian Assembly of America, Inc. v. Cafesjian*, 783 F. Supp. 2d 78, 91 (D.D.C. 2011) (quoting 28 U.S.C. § 453)).  Thus, as Justice Kennedy has observed, "under § 455(a), a judge should be disqualified only if it appears that he or she harbors an aversion, hostility or disposition of a kind that a fair-minded person could not set aside when judging the dispute." *Liteky*, 510 U.S. at 558 (Kennedy, J., concurring).

<em>1.     Zuckerman Spaeder's Representation of CTFK and Other Anti-Tobacco Organizations</em>

I do not think that a well-informed observer would question my ability to be impartial in this matter simply because my former law firm has represented anti-tobacco groups, including CTFK.  Reasonable, well-informed observers understand that law firms represent a variety of clients.  They also understand that lawyers personally, and law firms as institutions, do not necessarily agree or identify with their clients' actions or interests.  After all, lawyers and law firms advocate for clients, even when their clients' interests conflict with their own personal beliefs.  That is the hallmark of lawyering.

No reasonable person, for instance, would think that because I have spent much of my career representing the criminally accused, I favor people breaking the law.  I do not.  Or that now, as a judge, I do not treat the government fairly in criminal cases.  I do.  That same logic applies to the fact that my former law firm has represented anti-tobacco groups, including CTFK in connection with the Draft Guidance.  A well-informed person would not conclude, based on my former firm's representation of anti-tobacco interests, that I cannot be fair and impartial to the tobacco companies that are now before me.  That conclusion is bolstered by the fact that I never provided legal counsel to any anti-tobacco group during my time at Zuckerman Spaeder.  And,

with one exception when I was an associate,[14] I did no work at all with the firm's food and drug lawyers.

One of the main cases that Plaintiffs cite to support the proposition that I must recuse under Section 455(a) because of Zuckerman Spaeder's representation of anti-tobacco interests is *Hampton v. Hanrahan*, 499 F. Supp. 640 (N.D. Ill. 1980).  In *Hampton*, the trial judge recused himself from a case in which his former law partner was the co-chairperson of the board of a nonprofit legal organization and, in that capacity, had approved the filing of an *amicus* brief by the nonprofit, in an earlier stage of the case, advocating a position adverse to the defendants.  *See id.* at 643-45.  Although the judge's former law firm was not counsel for *amici* and was not involved in the brief's drafting, the former partner had reviewed the brief and had discussed it with other firm partners, although not the judge.  *Id.* at 634-44.  The court decided to recuse.  *Id.* at 645.  In stepping aside, the judge drew an analogy to rules governing attorney disqualification for conflicts of interest.  *See id.*  The judge reasoned that if his former partner's approval of the *amicus* brief could be imputed to him for purposes of attorney conflicts of interest, then the same standard should apply for judicial recusal under Section 455(a), thus warranting his recusal.  *See id.*

Although I respect the court's decision in *Hampton*, I decline to follow it here.   I find equating the standard for disqualifying lawyers based on conflicts of interest with the standard for judicial recusal under Section 455(a) to be an inapt comparison.   For one, the lawyer disqualification standard does not reflect Congress' effort to embody within Section 455(a) a balance between avoiding the appearance of judicial impropriety and guarding against judge-shopping.  *See In re Boston's Children First*, 244 F.3d 164, 167 (1st Cir. 2001) (observing that

---

[14] The lone exception is that I assisted Mr. Schultz with the submission of an *amicus* brief in a matter over 13 years ago that involved a challenge to an FDA regulation that required drug manufacturers to conduct drug tests on pediatric populations and to suggest pediatric doses. *See Assoc. of Am. Physicians and Surgeons, Inc. v. FDA*, 226 F. Supp. 2d 204, 205 n.1 (D.D.C. 2002).

Section 455(a) seeks to balance two competing policy considerations—that a judge must appear to be free of bias and "the fear that recusal on demand would provide litigants with a veto against unwanted judges" (citation omitted)); *see also In re Letters Rogatory*, 661 F. Supp. at 1172-73. For that reason alone, *Hampton* is unpersuasive.

In any event, the facts of *Hampton* presented a stronger case for recusal than the facts do here.  There, the *amici*'s "vigorous advocacy," which "did not differ in kind from that of plaintiffs themselves," led to the reversal of directed verdicts that another judge had entered in favor of the defendants and resulted in the assignment of the case to a new judge on remand.  *Hampton*, 499 F. Supp. at 643-44.  Thus, there was a direct, and arguably causal, connection between the *amici*'s work, which the judge's former law partner had approved, and an adverse litigation result for defendants.  Here, Plaintiffs and CTFK clearly have opposing interests.  But, unlike in *Hampton*, their adverseness did not spawn this litigation; the FDA's decision to reject Plaintiffs' positions did.  And, unlike in *Hampton*, CTFK has not sought to enter this case as an *amici* and Plaintiffs have not asserted that CTFK is likely to do so.  Thus, I do not think that my former partner's work on behalf of CTFK in connection with the Draft Guidance reasonably calls my impartiality into question.  Nor does my former firm's representation of other anti-tobacco groups, which is even further removed from the present case.

### 2.    *My Wife's Partnership at Zuckerman Spaeder*

I also conclude that my wife's partnership at Zuckerman Spaeder—or, as Plaintiffs put it, "[my] close personal ties to the firm," Recusal Mot. at 9—does not create an appearance of impartiality warranting recusal.  The assertion that recusal is warranted when a judge's family member has ties to a law firm connected to the case is well-trodden ground.  *See Microsoft Corp. v. United States*, 530 U.S. 1301, 1301-03 (2000) (Rehnquist, C.J.) (rejecting motion for recusal

under Section 455(a) based on his son's representation, in another case, of a party before the Court); *In re Medtronic, Inc. Sprint Fidelis Leads Products Liab. Litg.*, 601 F. Supp. 2d 1120, 1128 (D. Minn. 2009) (observing that the court was not "painting on a blank palette" in considering a motion for recusal based on family ties to law firm).  Indeed, a number of courts have addressed recusal motions predicated, as here, upon the judge's spouse's partnership in a law firm.

In *In re Billedeaux*, 972 F.2d 104 (5th Cir. 1992), the plaintiff sought recusal of the trial judge because the judge's husband's law firm had represented the defendant in other matters.  *Id.* at 104.  The Fifth Circuit affirmed the trial judge's decision not to recuse under Section 455(a) where "[t]here [wa]s no assertion that [the trial judge] ever represented [the defendant]; nor [wa]s there an averment that her husband ha[d] handled matters for that client."  *Id.* at 105.  The court concluded that, "[i]f a reasonable person knew all the relevant facts, he or she would know that any interest that could be attributed to [the trial judge] in the fate of her husband's law firm's sometime client is so remote and speculative as to dispel any perception of impropriety."  *Id.* at 106.  Similarly, in *ClearOne Communications, Inc. v. Bowers*, 643 F.3d 735 (10th Cir. 2011), the Tenth Circuit affirmed a trial judge's decision not to recuse under Section 455(a), where her husband was of counsel to a law firm that sometimes represented the defendant, but not in the case at hand, and where her husband had not worked on any matters on the defendant's behalf.  *Id.* at 776-77.

Similarly, in *In re Digital Music Antitrust Litigation*, No. 06 MDL No. 1780 (LAP), 2007 WL 632762 (S.D.N.Y. Feb. 27, 2007), the trial judge declined to recuse under Section 455(a) where her husband's law firm "from time to time" had represented two of the defendants in a multi-district litigation and her husband had worked on related matters for the defendants.  *Id.* at *1.  The trial judge observed that:  "Courts have uniformly rejected the argument that an

appearance of impropriety exists in the following situation:  (i) a judge's spouse is a partner in a law firm that represents a litigant in matters other than the case before the judge; and (ii) the spouse did not perform any work at the law firm for the litigant or work[ ] for the litigant on unrelated matters." *Id.* at *12.  The court declined to recuse, stating, "it is undisputed that neither my husband nor [his law firm] is representing any Defendant in the [multi-district litigation]," although the judge's husband had "worked for some of these Defendants in prior, assertedly related litigation." *Id.*  The court found that "no reasonable person would conclude that my impartiality might reasonably be questioned on the basis of my husband's prior representation of some Defendants in other, supposedly related cases." *Id.* at *13.

Other district court decisions are to the same effect.  *See, e.g.*, *United States v. Vazquez-Botet*, 453 F. Supp. 2d 362, 364, 371-73 (D.P.R. 2006) (declining to recuse where the judge's wife previously represented two potential trial witnesses); *Canino v. Barclays Bank, PLC*, No. 94-cv-6314 (SAS), 1998 WL 7219, at *3 (S.D.N.Y. Jan. 7, 1998) ("Even if Judge Cedarbaum had known that her husband's law firm represented the Defendant in an unrelated matter, § 455(a) would not have compelled her disqualification from this litigation."); *Diversifoods, Inc. v. Diversifoods, Inc.*, 595 F. Supp. 133, 134, 139-140 (N.D. Ill. 1984) (denying recusal where the trial judge's husband was a partner of law firm that "presently represents the defendant in other matters, and, prior to filing of this lawsuit, had some connection with the events underlying this litigation").

Consistent with the above-cited cases, I conclude that my wife's partnership at Zuckerman Spaeder does not compel my recusal under Section 455(a).  My wife has spent most of her legal career representing clients in white-collar criminal matters and in complex civil cases.  She also has advised law firms and lawyers on legal ethics matters.[15]  My wife was not involved in the

---

[15] *Caroline Judge Mehta*, Zuckerman Spaeder LLP, http://www.zuckerman.com/caroline_mehta (last visited January 12, 2016).

firm's representation of CTFK in connection with the Draft Guidance.  Nor has she ever provided legal services to CTFK or to any of the firm's other anti-tobacco clients as to any other matter. And, she has never represented any client that was adverse to a tobacco company.  In short, the mere fact that she is a partner in a law firm, a small component of which advises CTFK and other anti-tobacco groups, is simply too remote and too attenuated a connection to merit my recusal under Section 455(a).

Plaintiffs rely on *SCA Services, Inc. v. Morgan*, 557 F.2d 110, 113-14 (7th Cir. 1977), for the proposition that "family connections to law firms involved in pending matters can be sufficient to trigger recusal."  Recusal Mot. at 11.  *Morgan*, however, is readily distinguishable.  There, the Seventh Circuit ruled that a trial judge's recusal was required under Section 455(b) when his brother's law firm had entered an appearance in the matter before the court on behalf of a party. *Id.* at 116.  The court explained that:  "When one brother is a lawyer in the firm representing a party before his brother who is the judge in the case, the belief may arise in the public's mind that the brother's firm and its clients will receive favored treatment, even if the brother does not personally appear in the case."  *Id.*  Here, in contrast, my wife's law firm has not entered an appearance in this matter and the legal services that give rise to the alleged conflict occurred in the past.  Therefore, *Morgan* does not compel my recusal in this matter.

### 3.      Mr. Schultz's Designation as "Of Counsel" in this Matter

Finally, the designation of my former partner, William Schultz, as "Of Counsel" for Defendant FDA in this matter does not require my recusal.  As noted, Mr. Schultz left Zuckerman Spaeder to become the acting General Counsel of HHS in 2011.  He later was nominated and confirmed as General Counsel of HHS in 2012 and 2013, respectively.  Mr. Schultz, therefore, was not at the firm in June 2013, when one of the partners provided legal advice to CTFK regarding

the Draft Guidance.  And, although I presume that as General Counsel of HHS Mr. Schultz was involved in some way in FDA's adoption of the Guidance, I have no firsthand knowledge of his involvement; nor have I ever discussed it with him.

In any event, my friendship with Mr. Schultz does not present grounds for recusal under Section 455(a).  As the Seventh Circuit observed some time ago:  "In today's legal culture friendships among judges and lawyers are common.  They are more than common; they are desirable.  A judge need not cut himself off from the rest of the legal community. . . .  Many courts therefore have held that a judge need not disqualify himself just because a friend—even a close friend—appears as a lawyer."  *United States v. Murphy*, 768 F.2d 1518, 1537 (7th Cir. 1985) (citations omitted).  However, if "the association exceeds what might reasonably be expected in light of the associational activities of an ordinary judge, the unusual aspects of a social relation may give rise to a reasonable question about the judge's impartiality."  *Id.* (citation and internal quotation marks omitted).

No aspect of my friendship with Mr. Schultz can be fairly characterized as "unusual."  He and I have remained friends since his time at Zuckerman Spaeder.  Some years ago, when he was a partner at the firm, he hosted my wife and me (along with others) in his home.  I have had lunch with him once since becoming a judge.  I have not, however, spoken to him since learning of his "Of Counsel" designation in this case.  In short, nothing about our friendship would cause a reasonable, well-informed observer to doubt my ability to adjudicate the case before me fairly and impartially.  *See Henderson v. Dep't of Pub. Safety & Corr.*, 901 F.2d 1288, 1295-96 (5th Cir. 1990) (concluding that judge's friendship with opposing counsel "since he was a kid," as well as friendship with opposing counsel's father, did not warrant recusal under Section 455(a)); *Valley v.*

*Rapides Parish Sch. Bd.*, 992 F. Supp. 848, 851 (W.D. La. 1998) (holding that recusal was not required where intervenor's counsel was the trial judge's former law partner and friend).

*       *       *

As the above discussion demonstrates, neither my former firm's representation of CTFK and other anti-tobacco groups, nor my wife's partnership in the firm, nor my friendship with Mr. Schultz, viewed individually, requires my recusal under Section 455(a). I also conclude that, even viewed collectively, those facts likewise do not warrant my recusal. The reasonable, informed person would not think that I am reflexively "anti-tobacco" or that I could not impartially consider the merits of the case before me. Accordingly, I decline to recuse under Section 455(a).

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Recusal is denied.

Dated:  January 13, 2016

Amit P. Mehta
United States District Judge